No. 30,882.

HARRY S. BROWN, VIRGINIA BIENFANG and W. J. GRAY, *Plaintiffs,*
v. THE CITY OF ARKANSAS CITY, HARRY L. LONG, Mayor; R. C.
DIXON and P. J. RUCKEL, City Commissioners, *Defendants.*

(11 P. 2d 607.)

Opinion filed May 21, 1932.

*W. L. Cunningham, D. Arthur Walker, Fred G. Leach* and *Wm. E. Cunningham,* all of Arkansas City, for the plaintiffs.

*Tom Pringle* and *H. V. Howard,* both of Arkansas City, for the defendants.

The opinion of the court was delivered by

HUTCHISON, J.: This is an original proceeding in mandamus to require the city of Arkansas City to provide suitable rooms for holding the city court in that city and to provide suitable furniture, fuel, lights and necessary incidental expenses of such court as required by R. S. 20-1411.

The purpose of the action is to test the validity of city ordinance No. 886, repealing an earlier ordinance, No. 844, which established a city court in the city of Arkansas City under the provisions of R. S. 20-1401 to 20-1423 and 20-1401 as amended. The defendant

city of Arkansas City and mayor and commissioners thereof waived the issuance of alternative writ and service thereof and answered, admitting the allegations of the application except the invalidity of the repealing ordinance.

Section 20-1401 of R. S. 1931 Supp. provides that whenever it is made to appear to the satisfaction of the governing body of the city that there is need for the establishment of a city court in such city "such governing body may establish a city court in such city by ordinance of such city." It prescribes the jurisdiction of such court, limiting that of justices of the peace, provides for appointment and election of a judge and other officers of the court, their tenure of office and all the requisite details for the trial of certain civil and criminal cases and appeals from decisions rendered therein. Nowhere in the act or the amendment thereof is there any provision relating to the repeal of such ordinance.

The validity of the original ordinance is conceded, but it is the contention of the city and its mayor and commissioners that R. S. 14-401, which gives the governing body of a city the power to enact, ordain, alter, modify or repeal any and all ordinances not repugnant to the constitution and laws of the state, fully authorizes the city to repeal this ordinance. The reasoning is that since the governing body was to determine the need for the establishment of such a court, the same body should determine when that need ceased to exist and then discontinue the court. Counsel for defendants cite 2 McQuillin on Municipal Corporations (2d ed., § 514) as to the power of a city to abolish by ordinance whatever it has power to create by ordinance. That general proposition, however, is modified by the following expression "unless restraint exist in the organic law." The organic law was quoted above from R. S. 14-401, which limits both enactments and repeals by cities of the second class to ordinances "not repugnant to the constitution and laws of this state."

The relation of a city to the state is very different from that of the state to the United States government. The city derives all of its power and authority from the state, whereas the thirteen original states which organized the government reserved to themselves some rights and conceded others to the government. The only authority any city has in this state is that given it by statute, and that is given mainly in R. S. 14-401 and R. S. 12-101. With respect to courts of all kinds in this state we must go back one step farther

and find what authority is given by the constitution to the legislature with reference thereto. Article 3, section 1, of the Kansas constitution provides:

"The judicial power of this state shall be vested in a supreme court, district courts, probate courts, justices of the peace, and such other courts, inferior to the supreme court, as may be provided by law . . ."

Now the legislature has by law provided for a city court in certain cities whenever it is made to appear to the satisfaction of the governing body thereof that there is need for its establishment. Under our constitution the legislature is the only source of this power, and the legislature has limited its delegation of authority to the city to one feature only, and that is the determination of a need for its establishment. This is in the nature of a finding of fact and is not necessarily legislative in character. Any act or attempted act by the city beyond or aside from that one delegated feature would be repugnant to the laws of this state.

"Municipal corporations are creations of law and can exercise only powers conferred by law and take none by implication. . . ." (State, ex rel., v. City of Coffeyville, 127 Kan. 663, syl. ¶ 1, 274 Pac. 258.)

Counsel for defendants cite the cases of Stone v. Mahon, 88 S. C. 576, and State, ex rel. Quintin, v. Edwards, 40 Mont..287, as sustaining the contention of the city. The first was a case very much like the one at bar. It raised the question of the right and authority of the city to repeal an ordinance establishing a city court, and the court held that a city had a right to repeal such ordinance and abolish the court during the term of office of the judge duly elected, but that was not the basis of the ruling that disposed of the case, for it was held that the act of the legislature delegating to the municipal corporation the power to establish the court was unconstitutional and void.

The Montana case cited concerned the abolishing of an office of patrolman which had previously been established by ordinance, and it was held that in the absence of restrictions in a case of that kind it could be done, but the supreme court recognized the general rule which it expressed in the fifth paragraph of the syllabus, as follows:

"Municipalities have only such powers as are expressly conferred upon them by the statute creating them, and such as are necessarily implied or are indispensable for the proper accomplishment of the purpose of their organization, and any reasonable doubt as to the existence of any power must be resolved against the corporation, and the power denied." (State, ex rel. Quintin, v. Edwards, 40 Mont. 287, syl. ¶ 5.)

The city of Wichita by ordinance placed its public library under the provisions of a certain act and later attempted to rescind that action, and it was held:

"After a city commission by proper resolution under chapter 122 of the Laws of 1915 decides to bring its public library under the provisions of chapter 121 of the Laws of 1903 and acts supplementary thereto and amendatory thereof, such acts then govern, and their operation cannot be taken away by rescinding the former resolution." (*State, ex rel., v. Bentley,* 96 Kan. 344, syl. ¶ 1, 150 Pac. 218.)

The constitutionality and validity of this city-court law now under consideration was tested and tried out in the case of *State, ex rel., v. Smith,* 130 Kan. 228, 285 Pac. 542, as applied to the city court in Salina, and the following portions of the opinion are especially applicable here:

"There is nothing in the act which purports to give the governing body of the city power to add to, take from or to modify the provisions of the act. The legislature simply provided that when a certain condition is found to exist in any city of the class named the act comes into operation. Upon the happening of a specified contingency, a fact to be found by a local agency, the act is to take effect in that city. . . . The statute in question falls clearly within the rule of the decisions cited, and cannot be held to be a delegation of legislative power to the governing body of the city. The contingency under which the act was to become operative in a city was defined by the legislature; that is, a finding and declaration of the governing body that there is need for the establishment of a city court for the administration of justice within the city. These officers elected by the people may be assumed to be well qualified to determine whether or not such a need exists. The declaration of a finding made is required in the act to be embodied in an ordinance. It might have been provided for through a resolution or a motion passed or other official declaration. The ordinance passed was a sufficient record of the finding of the commission and is no more a delegation of legislative power than if the finding had been declared by a method other than by ordinance." (pp. 231, 233.)

So it has already been determined in this state that the finding of need for the establishment of a city court was not an exercise of legislative power, although such finding was put in the form of an ordinance. If the city in the first place lacked legislative power there was no possibility of its possessing an implied power to rescind or repeal. This is in harmony with the general law on this subject.

"The general rule governing the power of municipal councils to repeal ordinances does not apply where the ordinance has been enacted under a narrow, limited grant of authority to do a single designated thing in the manner and at the time fixed by the legislature, which precludes the implication that the common council was given any further authority over the subject than to do the one act." (43 C. J. 563.)

"A municipal corporation, even if it existed before the state in which it is located became an independent sovereignty, has no powers which are not derived from and subordinate to those of the state. . . . In other words, the people of a particular portion of a state, by enjoying the privilege of self government, acquire no vested right therein as against the legislature representing the people of the whole state." (19 R. C. L. 730, 731.)

"A municipal council which has been granted the power to enact ordinances has, as an incident thereto and without any express reference thereto in the statutes, power to repeal ordinances. It has been held, however, that this principle will not apply where the ordinance has been enacted under a narrow, limited grant of authority to do a single designated thing in the manner and at the time fixed by the legislature, and which excludes the implication that the common council was given any further authority over the subject than to do the one act." (19 R. C. L. 901.)

See, also, the case of *State, ex rel., v. Gaitskill*, 133 Kan. 389, 300 Pac. 326, where a legislative attempt was held to be ineffective in ousting a district judge from office in the second division of the district court of Crawford county, because the act of the legislature attempting to accomplish that purpose was indefinite, incomplete, vague and conflicting in its provisions.

The financial situation to which reference is made cannot affect the validity of enactments as was determined in the case of *State, ex rel., v. Hettinger*, 134 Kan. 405, 5 P. 2d 862, concerning the city court under this law at Hutchinson, as follows:

"The fact that the creation of a city court under an ordinance made pursuant to authority of statute may disarrange the city's fiscal affairs as contemplated by its current annual budget does not invalidate the court nor render nugatory the ordinance creating it." (Syl. ¶ 3.)

In harmony with the previous rulings of this court with reference to the establishment of city courts under R. S. 1931 Supp. 20-1401, it must be concluded that the repealing ordinance, No. 886, of Arkansas City is invalid and of no force and effect, and the finding of ordinance No. 844 as to the need of such a court is still in effect.

The writ is allowed.